IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 23 CR 220 |
| MIGUEL LOPEZ, | ) ) | Judge John J. Tharp, Jr. |
| Defendant. | ) ) ) | |

**MEMORANDUM OPINION AND ORDER**

A jury found defendant Miguel Lopez guilty of conspiring to distribute 500 grams or more of cocaine and doing so. Lopez has moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 and for a new trial pursuant to Federal Rule of Criminal Procedure 33. Both motions are denied for the reasons set forth below.

### I. BACKGROUND

#### A. EVIDENTIARY RECORD

Drawing all reasonable inferences in the government's favor, as required by the jury's verdicts, the evidence at trial showed that between September 8, 2021, and September 15, 2021, undercover DEA Task Force Officer Rodolfo Avalos, posing as a drug purchaser, exchanged texts and phone calls with an individual known as Dani, based in Mexico, to plan a transaction in which the undercover officer would purchase a kilogram of cocaine. As part of those discussions, Dani told Officer Avalos that a local contact based in Chicago would call and identify himself using a code word: "Senator." The following day, defendant Lopez called Officer Avalos and identified himself using Dani's code word. Lopez and Officer Avalos set a time and place to complete the deal. On September 15, 2021, defendant delivered a kilogram of cocaine to Officer Avalos in a parking lot near Gary's Burritos, a restaurant in Carol Stream, Illinois.

When he delivered the cocaine, however, Lopez did not collect the $34,000 cash payment from Avalos. When Avalos spoke with Dani by phone just minutes later, and explained that the local contact had not collected the cash, Dani relayed that information to others and within the next several minutes, Lopez was contacted by someone in Mexico. Immediately thereafter, Lopez contacted Avalos to arrange to meet again to pick up the cash. Within a few minutes, Lopez met Avalos for the second time near Gary's Burritos and collected the payment for the kilogram of cocaine.

      B.      PROCEDURAL HISTORY

On June 29, 2023, Defendant Lopez was charged in a two-count indictment with conspiring to distribute 500 grams or more of cocaine (Count One) and distributing 500 grams or more of cocaine (Count Two). A jury trial was held in May 2024. Over the course of three days, the government presented testimony from several witnesses, including Officer Avalos and other members of law enforcement, a drug trafficking expert, lay witnesses from defendant's former employer, and even the individual who defendant claimed was the actual culprit. The government also introduced dozens of exhibits, including the audio of Officer Avalos's consensually recorded phone calls and meetings, and the transcripts of those recordings translated from Spanish to English.

At the close of the government's case-in-chief, Lopez moved for a judgment of acquittal on both counts, but argued only that there was insufficient evidence of a conspiracy to sustain a verdict on Count One. Trial Tr. at 424. Lopez asserted that the conspiracy evidence was wanting because it failed to show that there was any direct communication between the defendant and Dani, who was the only other coconspirator identified in the indictment (understanding that the undercover agent was not a coconspirator). The Court denied the motion, noting that "there was

2

clearly communication at both stages of this process that involved Dani and Mr. Lopez working toward the common objective of distributing this kilogram of cocaine, and that's enough for a reasonable jury to infer that there was a conspiratorial agreement." Trial Tr. 426-27.

The defense did not present evidence.

On May 30, 2024, after deliberating for less than two hours, the jury found defendant Lopez guilty on both counts of the indictment. He challenges the sufficiency of the evidence as to each count pursuant to Rule 29 and, in the alternative, seeks a new trial based on the allegedly erroneous admission of coconspirator statements pursuant to Federal Rule of Evidence 801(d)(2)(E).

## II. ANALYSIS

### A. MOTION FOR JUDGMENT OF ACQUITTAL

After a jury's guilty verdict, a criminal defendant seeking a judgment of acquittal under Rule 29 faces a hurdle that the Seventh Circuit has deemed "nearly insurmountable." *See United States v. Jones*, 713 F.3d 336, 339 (7th Cir. 2013). Nevertheless, it is not "wholly insurmountable," and because the government bears the burden of proof, "the height of the hurdle depends directly on the strength of the government's evidence." *Id*. If the evidence is insufficient to sustain the conviction, this Court must grant a motion for judgment of acquittal. *See id*. at 339-40. The standard for a motion for judgment of acquittal under Rule 29(c) requires the court to consider the evidence in the light most favorable to the government and overturn the verdict only when "the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." *United States v. Peterson*, 823 F.3d 1113, 1120 (7thCir. 2016); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "Rule 29(c) does not authorize the judge to play thirteenth juror." *United States v. Genova*, 333 F.3d 750, 757 (7th Cir. 2003).

1.     **Count Two: Distribution**

The government's response brief addresses Lopez's challenge to his conviction on the distribution charge (Count Two) first and the Court will do the same because Lopez challenges the sufficiency of the evidence that he was the individual who provided the cocaine to Avalos. If he's right, that would call into question the sufficiency of the evidence that he was involved in the conspiracy charged in Count One as well.

But Lopez is not right. The evidence was more than sufficient to support the jury's verdict that Lopez delivered the kilogram of cocaine to Avalos on September 15. To begin, Avalos identified Lopez during the trial as the individual—wearing a short-sleeve red shirt and a red ball cap—who delivered the cocaine to him and returned shortly thereafter to collect the payment. When Avalos arrived at the location the local contact had designated at noon on September 15, Lopez called him, asking if Avalos could see him. Avalos confirmed that he saw an individual wearing a red shirt and Lopez confirmed that Avalos had the right person. GX 202-T.

Avalos also testified that he had previously met Lopez in March 2021 during other investigative activity. On that occasion, Lopez was driving a white Dodge Charger and agents confirmed Lopez's identity through vehicle registration and driver's license records that identified Lopez as the owner of that vehicle. As a result of that March meeting, law enforcement was also aware that Lopez worked on Kehoe Boulevard in Carol Stream, near the Gary's Burritos shop. Avalos testified that he recognized the individual identified in March as Lopez to be the local contact who delivered the cocaine to him on September 15. In addition, another agent (George Hickey) conducting surveillance of the parking lot adjacent to Marmon Foods, Lopez's place of employment, also identified Lopez during the trial as the individual he saw leaving Marmon Foods shortly before noon on September 15, Agent Hickey testified that Lopez got into a white Dodge

4

Charger and drove out of the parking lot. Yet another agent (Jason Fisher) then picked up surveillance of the white Charger, which proceeded to the parking lot adjacent to Gary's Burritos.

After the cocaine was delivered, surveillance broke off, but Agent Fisher returned to the Marmon Foods parking lot after learning that Lopez had not collected the cash. Fisher located the white Dodge Charger in the lot, and shortly thereafter saw Lopez exit the building and run to the white Dodge Charger. Fisher followed the Charger back to the area of the Gary's Burritos, and saw Lopez get out of his car and into the undercover car Officer Avalos was driving.

This visual identification evidence, standing alone, was sufficient to support the jury's verdict, but the government also presented voice identification evidence. Officer Avalos testified that he recognized Lopez's voice as that of the individual identified in March as Miguel Lopez. Avalos had four conversations with the user of a phone number ending in x8474 concerning the September 15 cocaine transaction; each was recorded, and Avalos testified that he recognized the voice of the other individual on those calls to be that of the Miguel Lopez he had met in March 2021 and encountered again on September 15. In addition, Lopez's former manager at Marmon Foods (Thomas Foley) testified that he believed he heard Lopez's voice on each of the four recorded calls.

Lopez's vacation and work schedules also supported an inference that Lopez was the drug courier who met with Avalos on September 15. In a call on Thursday, September 9, Dani told Avalos that the deal could not take place the next day because the local contact had booked a 6:00 a.m. flight for a weekend trip with his girlfriend. Consistent with that report, Lopez's time records at Marmon Foods indicated that he took a vacation day on Monday, September 13.

Lopez contests the sufficiency of this evidence that he was the local contact communicating with Avalos. He asserts that there was another individual, Jesus Barrera, who also worked at

5

Marmon Foods in September 2021, matched Lopez's physical description, was the subscriber for the x8474 phone number, and also drove a Dodge Charger. These assertions overstate the similarities between Lopez and Barrera. Apart from the fact that the government called Barrera as a witness and he denied any involvement in the September cocaine transaction (or any other drug deals), Barrera—who knew Lopez as a coworker—identified Lopez as the individual in a September 15 photo taken by surveillance near Gary's Burritos just before the transaction, wearing a red shirt and red hat (and comparing that photo to Barrera, a jury could easily conclude that the individual in the photo was not Barrera). Barrera is also short of stature—5' 2"—while Lopez was described by both Avalos and Hickey as of average height. Barerra also testified that his Dodge Charger was black and that he had never driven, or been in, Lopez's white Dodge Charger.

As for the registration of the x8474 phone number, subscriber information obtained and presented by the government at trial identified the subscriber to that number as "Jesus Barera" of Lenexa, Kansas. The name was spelled differently than Barrera's and Barrera testified that he had never been to Kansas, much less lived there. Eric Treveno, a DEA agent, also testified at trial that drug traffickers may use phones registered to others in an effort to hide their identities.

Further distinguishing Barrera from Lopez was the evidence that—unlike Lopez—Barrera was not on vacation on September 13; his time sheet from Marmon Foods indicates that was at work on that day so a reasonable jury could conclude that Dani was not describing Barrera when he told Avalos that the local contact was taking a weekend trip with his girlfriend.

This evidence provided an ample basis to support the jury's finding that the individual Avalos received the cocaine from—the man in the red polo and red ball cap—was Miguel Lopez.

## 2. Count One: Conspiracy

Lopez also asserts that the government failed to prove the elements of the conspiracy charge (Count One) beyond a reasonable doubt. His sole argument in that regard (apart from his contention, discussed above, that he was not the individual who supplied the cocaine to Avalos) is that the government presented no direct communications between Dani and himself. He maintains that the only communications he engaged in were with the Officer Avalos, who was not a coconspirator. Without evidence of communications between Dani and himself, he contends, there is no evidence from which to infer that he conspired with Dani or anyone else.

While it is true that the government did not present any recordings of calls between Lopez and Dani, or testimony from anyone who heard them speaking to each other, it is not accurate to say, as Lopez does, that there was no evidence of communications between Dani and him. Nor does it mean that there was not other evidence showing that Dani and Lopez were working in concert to deliver a kilogram of cocaine to Officer Avalos.

The evidence showed that for a week before the cocaine sale on September 15, Avalos was arranging the transaction by telephone with Dani, who was located in Mexico. In these communications, Dani told Avalos that someone local would contact Avalos to make the sale. This individual, Dani explained, would identify himself by using the code word "Senator." On September 14, 2021, Avalos received a phone call from an individual who said he was "talking on behalf of "Senador." That individual was defendant Lopez; he and Avalos arranged to meet the next day to conduct the sale. This information alone is sufficient to show that Lopez was conspiring with Dani to distribute a kilogram of cocaine to Avalos. It is more than reasonable to infer from Lopez's use of the code word Dani supplied to Avalos that Lopez and Dani had also communicated about the code word by which Lopez would identify himself to Avalos and enable the deal to go forward.

But there is more. First, of course, is the fact that Lopez showed up with the kilogram of cocaine that Avalos had been communicating about with Dani, a fact that shows that he had communicated directly or indirectly with Dani about that transaction and was working in concert with Dani to complete the transaction. In the September 9 call described above, for example, Dani told Avalos that he (Dani) had spoken with the local guy directly about scheduling the transaction. GX 103-T.

Further, just after Lopez provided the cocaine to Avalos, he called a phone number in Mexico. A few minutes later, Dani called Avalos, who explained that Lopez had delivered the cocaine but had not taken the money from Avalos. Clearly frustrated, Dani spoke to others (while staying on the phone with Avalos) and then told Avalos that the contact would call Avalos to meet again to collect the payment for the kilogram of cocaine. In the next minute, a surveillance officer (Agent Fisher) saw Lopez (who had returned to work at a nearby company) exit the building, run to his car, and drive off in the direction of his prior meeting with Avalos. Lopez then contacted Avalos and arranged to meet him again near Gary's Burritos, where he collected the payment from Avalos. It is not certain who Lopez spoke to in Mexico about collecting the payment, but that doesn't matter. Plainly, Lopez had heard from Dani indirectly about failing to take the payment and both were working in concert to remedy that error and to complete the transaction. As such, it was reasonable for the jurors to find it beyond reasonable doubt that Lopez and Dani were conspiring together to distribute a kilo of cocaine to Avalos.

**B.     MOTION FOR A NEW TRIAL**

In the alternative to vacating the jury's verdicts, Lopez seeks a new trial pursuant to Federal Rule of Criminal Procedure 33. That rule provides that a trial court "may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). A defendant is entitled

8

to a new trial only if there is a reasonable possibility that a trial error had prejudicial effect upon the jury's verdict. *United States v. Van Eyl*, 468 F.3d 428, 436 (7th Cir. 2006). A jury verdict in a criminal case is "not to be overturned lightly," and therefore a new trial should be granted only where there is serious danger that a miscarriage of justice occurred. *See United States v. Morales*, 902 F.2d 604, 606 (7th Cir. 1990). "The exercise of power conferred by Rule 33 is reserved for only the most extreme cases." *United States v. Peterson*, 823 F.3d 1113, 1122 (7th Cir. 2016).

Lopez's motion for a new trial asserts that the Court erred in admitting statements pursuant to Rule 801(d)(2)(E) because there was insufficient evidence that Lopez was a conspirator. This is the same argument Lopez advances in his Rule 29 motion as to Court One, and it fails for the same reasons. There was ample basis for the jury to find that Lopez and Dani conspired together to distribute cocaine to Avalos. Lopez does not challenge the admission of any specific statements as failing to be in furtherance of the conspiracy, or for any other reason, and so has failed to identify any error in the Court's rulings admitting various statements as coconspirator statements under Rule 801(d)(2)(E).

\* \* \* \* \*

For the foregoing reasons, Defendant Lopez's motions for acquittal and for a new trial are denied.

Dated: September 17, 2024

John J. Tharp, Jr.
United States District Judge